UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X
KEVIN MOORE,

                                                    16 Civ. 4773 (KMK)

                         Plaintiff,

     -against-

ANTHONY J. ANNUCCI, individually and in his official
capacity as Acting Commissioner of the New York State
Department of Corrections and Community Supervision,
ADA PEREZ, individually and in her official capacity as
Superintendent of Downstate Correctional Facility,
SERGEANT KATHY TODD-SCOTT, individually and in her
official capacity, CORRECTIONAL OFFICER GEORGE
SANTIAGO, individually and in his official capacity,
CORRECTIONAL OFFICER DONALD COSMAN,
individually and in his official capacity, CORRECTIONAL
OFFICER CARSON MORRIS, individually and in his official
capacity, CORRECTIONAL OFFICER ANDREW LOWERY,
individually and in his official capacity, SUSAN LANGFORD,
RN-II, individually and in her official capacity, PANDORA A.
VOLPE RN-II, individually and in her official capacity,
WILLIAM MANY, individually and in his official capacity as
Deputy Superintendent for Security of Downstate Correctional
Facility, MARIO MALVAROSA, M.D., individually and in his
official capacity as Downstate Correctional Facility Health
Services Director, and SERGEANT JOHN DOE, individually
and in his official capacity,

                         Defendants.
---------------------------------------------------------------------------X

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS

       Pursuant to the Local Rule 56.1 of the Southern and Eastern Districts of New York, plaintiff Kevin Moore hereby submits the following Statement of Material Facts in support of his motion for summary judgment:

       1.       On November 12, 2013, defendant Kathy Todd-Scott was an employee of the State of New York and possessed the rank of "sergeant" within the New York State Department of Corrections and Community Supervision ("DOCCS"). *See*, Hines Dec., Ex. G (Todd-Scott

Answer) ¶1. At the time of the subject incident alleged in the Amended Complaint, Sgt. Scott was present in Housing Unit 1-D of Downstate Correctional Facility ("Downstate"). As a sergeant, defendant Scott was responsible for the direct supervision of defendants Santiago, Morris, and Lowery, among others; for supervising the custody, security, safety and well-being of Plaintiff and other prisoners at Downstate; for supervising the movement and activities of Plaintiff and other prisoners at Downstate; for maintaining order within the facility; for preparing reports as necessary; and for advising inmates on the rules and regulations governing the operation of the facility and assist them in resolving problems. *See*, Hines Dec., Ex. A (Am. Cmpl.) ¶17.

2. On November 12, 2013, defendants George Santiago, Carson Morris, and Andrew Lowery were employees of the State of New York and possessed the rank of "officer" within DOCCS. At the time of the subject incident alleged in the Amended Complaint, defendants Santiago, Morris and Lowery were present in Downstate's Housing Unit 1-D. As correction officers, defendants Santiago, Morris and Lowery were responsible for the custody, care and control of Plaintiff and other prisoners at Downstate; for protecting the security, safety and well-being of Plaintiff and other prisoners at Downstate; for supervising the movement and activities of Plaintiff and other prisoners at Downstate; for maintaining order within the facility; for preparing reports as necessary; and for advising inmates on the rules and regulations governing the operation of the facility and assist them in resolving problems. *See*, Am. Cmpl. ¶18; *see also*, Hines Dec., Ex. H (Santiago Answer) p. 2.

3. At the time of the excessive use of force alleged, defendants Todd-Scott, Santiago, Morris and Lowery were acting under color of law. *See, generally*, Hines Dec., Ex. B (Indictment); Ex. C (Information); Am. Compl. ¶23; Santiago Answer, p. 2.

4. On or about November 12, 2013, DOCCS transported Plaintiff, a prisoner confined to its custody and care, from Coxsackie Correctional Facility to Downstate, where he was scheduled to be picked up by and transferred to the custody and care of the New York City Department of Correction the following morning for a pending N.Y. C.P.L. §440 motion hearing in a New York City criminal court. *See,* Indictment ¶¶1(c), 2-11; Am. Cmpl. ¶2; Santiago Answer, p. 1; Todd-Scott Answer (uncontested).

5. Shortly after Moore arrived, defendants Todd-Scott, Santiago, Morris, and Lowery (collectively, "the defendant officers"), among others, brutally beat Moore for an extended period of time with fists, boots and batons, causing many life-threatening injuries, including five fractured ribs, a collapsed lung, [] facial fractures in multiple places…, severe back, hand, leg and foot contusions, and ripped a clump of dreadlocks from Moore's head, which defendant Santiago took as a "trophy" following the beating. *See*, Indictment ¶(c); Am. Cmpl. ¶3, 25-35.

6. As a result of the beating, Moore was hospitalized for approximately 17 days. *See*, Indictment ¶1(c).

7. The defendant officers' use of force on Plaintiff was excessive and served no legitimate penological purpose. *See, generally,* Indictment; Information.

8. Defendant Morris initiated the beating by punching Moore and striking Moore with his baton. *See,* Indictment ¶4.

9. After Moore was forced to the ground, defendant Todd-Scott restrained Moore as Santiago and Morris continued to beat him for several minutes as Moore cried out in pain and pleaded for mercy. *See,* Indictment ¶5.

10. Defendant Santiago punched Moore multiple times while Moore was lying on the ground and then, at one point, Santiago kicked Moore in the face. *See,* Indictment ¶6.

11. While Moore was on the floor, defendant Morris continued to punch Moore and kick him. *See,* Indictment ¶7.

12. Defendant Todd-Scott did she make any attempt to stop or abate the defendant officers' beating. Defendant Todd-Scott physically restrained Moore while the other defendants beat him. *See,* Indictment ¶¶8-9.

13. Plaintiff pleaded with Todd-Scott, stating "Why, Sarge? Why?" as he lay in a pool of his own blood. *See,* Indictment ¶¶8-9.

14. Defendant Todd-Scott "watched over the entire beating without doing anything to stop the violence. At one point while Kevin Moore was on the floor being beaten, Scott physically grabbed Moore. Scott also directed one and more correction officers to hold Moore in place on the ground, rending him even more exposed to the punches and kicks from the other defendants." *See,* Indictment ¶¶8-9; *see also*, Am. Compl. ¶¶31, 35.

15. Defendant Lowery was present during the beating and did not make any attempts to stop or abate the beating. *See, generally*, Information; Plea Bargain Agreement.

16. After the beating ended, defendant Santiago stated he wanted to keep Plaintiff's ripped-out dreadlocks as a souvenir for his motorcycle and retrieved them. *See,* Indictment ¶10; *see also*, Am. Compl. ¶32.

17. Following the beating, Plaintiff was maliciously forced to walk to Downstate's infirmary as the defendant officers refused his pleas for medical assistance at the scene. The walk to the infirmary was extensive and labyrinthine, involving numerous flights of stairs and maze-like corridors. *See*, Am. Cmpl. ¶45.

18. While at the infirmary, defendant Nurse Langford performed a cursory examination of Plaintiff and determined that despite his objectively serious injuries he was fit for confinement to a SHU cell. *See*, Am. Cmpl. ¶¶46-50.

19. The defendant officers did not seek immediate hospital treatment for Plaintiff.

20. The defendant officers fabricated a story to justify the excessive use of force – to wit, that one of them was attacked and injured by Moore before the beating and that the force was necessary to restrain Moore. *See*, Indictment ¶12.

21. Defendant Santiago struck defendant Cosman "on the back with a baton causing injury marks to make it appear as if he had been attacked by Moore. [Defendant] Morris further applied friction with his hands to the injury marks in order to make them appear more serious." *See,* Indictment ¶12; *see also*, Am. Compl. ¶37.

22. Defendant Todd-Scott took photographs of these injury marks to include in the Use of Force package. *See*, Indictment ¶13; *see also*, Am. Compl. ¶37.

23. Defendants Scott, Santiago, and Morris "met and agreed to write a false report describing the force used against Kevin Moore (the "Use of Force Report") and supporting memoranda… reporting that Moore had pushed one of the correction officers backward onto a table and, only in response, had the correction officers used a reasonable amount of force to restrain Moore." *See*, Indictment ¶14; *see also*, Am. Compl. ¶38.

24. Defendant Santiago instructed defendant Lowery to make entries in the official log book that Moore started the incident by shoving an officer and also telling Lowery to remove Moore's pool of blood from the floor, which Lowery did. *See*, Indictment ¶¶15-16; *see generally*, Information ¶5(a) and Lowery's Plea Bargain Agreement; Am. Compl. ¶39

5

25. The subject use of force was investigated by DOCCS' Inspector General's Office. On January 10, 2014, DOCCS suspended defendants Todd-Scott, Santiago, and Morris without pay and on January 17, 2014. See, Am. Compl. ¶5, 22-35.

26. Following a disciplinary arbitration hearing held over five (5) days in March and April 2014, by Decision dated September 15, 2014, the arbitrator found defendants Todd-Scott and Santiago culpable and held "[t]he proposed penalty of termination is appropriate" as to these defendants. Defendant Morris was suspended without pay until October 22, 2014. *See*, Am. Cmpl. ¶5.

27. DOCCS' Inspector General's Office referred the defendant officers to the Dutchess County District Attorney's Office for prosecution of the defendant officers. The matter was then referred to the Southern District of New York for prosecution. *See*, Am. Cmpl. ¶6.

28. On September 15, 2016, defendants Todd-Scott, Santiago, and Morris were each charged in a four-count federal Indictment related to their excessive use of force on Plaintiff. *See*, *U.S. v. Kathy Scott, et. al.,* 16 Cr. 626 (KMK). *See*, Indictment.

29. Defendant Lowery was similarly charged in a four-count federal Information related to the excessive use of force on Plaintiff. *See, United States of America v. Andrew Lowery*, 16 Cr. 503 (NSR). *See*, Information.

30. Each of the defendant officers was charged with (a) conspiracy to deprive civil rights, 18 U.S.C. §241 (a Class C Felony), (b) deprivation of civil rights under color of law, 18 U.S.C. §242 (a Class C Felony), (c) conspiracy to falsify records, 18 U.S.C. §371 (a Class D Felony), and (d) falsifying records, 18 U.S.C. §1519 (a Class C Felony). *See*, Indictment; Information.

31. On July 27, 2016, defendant Lowery pleaded guilty to all four charged counts. *See*, Hines Dec., Ex. F (Docket Report, Plea Bargain Agreement, and Criminal Judgment).

32. On November 1, 2017, defendant Morris pleaded guilty to all four charged counts. *See*, Hines Dec., Ex. D (Docket Report); Ex. E (Criminal Judgment).

33. On November 20, 2017, defendants Todd-Scott and Santiago were found guilty by a jury on all four charged counts of the Indictment. *See*, Hines Dec., Ex. D (Docket Report); Ex. E (Criminal Judgment).

34. Defendant Todd-Scott was sentenced to a term of imprisonment of 100 months to run concurrently for all four counts. *See*, Hines Dec., Ex. D (Docket Report); Ex. E (Criminal Judgment).

35. Defendant Santiago was sentenced to a term of imprisonment of 87 months to run concurrently for all four counts. *See*, Hines Dec., Ex. D (Docket Report); Ex. E (Criminal Judgment).

36. Defendant Morris was sentenced to a term of imprisonment of 40 months to run concurrently for all four counts. *See*, Hines Dec., Ex. D (Docket Report); Ex. E (Criminal Judgment).

37. Defendant Lowery was sentenced to a term of 3 years supervised release to run concurrently for all four counts. *See*, Hines Dec., Ex. F (Docket Report and Criminal Judgment).

Dated: Brooklyn, New York
       November 30, 2018

Respectfully submitted,

HELD & HINES, L.L.P.

By:     */s/ Philip M. Hines*
        Philip M. Hines, Esq.
        2004 Ralph Avenue
        Brooklyn, New York 11234

(718) 531-9700
phines@heldhines.com

*Attorneys for Plaintiff Kevin Moore*